# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**June 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **H.J., R.H., and E.H.**

**No. 16-0218** (Kanawha County 14-JA-210, 14-JA-211, & 14-JA-321)

## MEMORANDUM DECISION

Petitioner Mother C.J., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's February 11, 2016, order terminating her parental rights to H.J., R.H., and E.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights and in denying her post-termination visitation with the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2014, the DHHR filed an abuse and neglect petition against the parents and alleged that there was ongoing domestic violence in the home that emotionally harmed the children. At the time the petition was filed, H.J. and R.H. were five years old and eleven months old, respectively. Petitioner and the children lived with D.H., the biological father of R.H. and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

subsequently-born E.H.[3] As to petitioner, the DHHR also alleged that her mental health, including issues with anger management and self-control, prevented her from being an appropriate parent. The DHHR initially instituted a safety plan in the home, but it proved unsuccessful. As such, the children were removed from the home and placed in foster care. Additionally, petitioner was pregnant at the time of the petition's filing.

In September of 2014, the circuit court held an adjudicatory hearing, during which petitioner stipulated to allegations of abuse and neglect. As such, the circuit court found that petitioner participated in and initiated domestic violence against the father in the children's presence and adjudicated her as an abusing parent. The circuit court then granted petitioner a post-adjudicatory improvement period. The circuit court ordered that petitioner undergo a psychological evaluation, adult life skills and parenting education, and services designed to address issues of anger management. The circuit court also granted petitioner visitation with the children. The following month, the DHHR filed an amended petition to include recently-born infant E.H. in the proceedings. According to the amended petition, E.H. tested positive for cannabinoids at birth. The circuit court subsequently ordered petitioner to undergo random drug screens.

In November of 2014, all three children were returned to the father, who was no longer living with petitioner. At the time, the father lived with his sister, and the children's return was subject to compliance with an in-home safety plan. Ultimately, in January of 2015, the DHHR removed the children from the father's home. The following month, the circuit court held a review hearing and extended petitioner's improvement period. In June of 2015, the DHHR filed a second amended petition that alleged that the parents admitted to smoking marijuana in May of 2015 and that, in June of 2015, petitioner threw an electronic tablet at the father. Further, the second amended petition alleged that the father accused petitioner of "blacking" his eye on several occasions and trying to stab him in the head with a knife on another occasion. The petition further included petitioner's allegation that the father "busted her mouth." Finally, the second amended petition alleged that petitioner appeared at the father's parents' home with a baseball bat and threatened him.

In August of 2015, the circuit court held a dispositional hearing, during which it was presented with evidence of ongoing domestic violence issues between the parents. It was indicated that during one incident shortly after E.H.'s birth, petitioner jumped from the father's moving vehicle during an altercation. Further, during the proceedings, petitioner was evicted from her residence due to "excessive disturbances and physical altercations for which law enforcement ha[d] been called." Despite being barred from the property, the father was seen in an argument with petitioner and others. Similar incidents were reported during supervised visits, with one service provider reporting that the parents demonstrated "highly inappropriate behavior during two separate visitations." Moreover, evidence established that H.J. exhibited "stark behavioral and attitudinal changes subsequent [to] every visit[] with his parents" It was noted that H.J. acted out in school, on the bus, at his foster home after visits, and that he exhibited

---

[3]The proceedings in circuit court also included H.J.'s biological father as a named respondent. However, none of the rulings in regard to this individual are pertinent to petitioner's appeal. As such, D.H. is referred to as "the father" throughout this memorandum decision.

verbal aggression, noncompliance, and self-injurious behavior. Further, the circuit court found that petitioner failed to consistently submit to drug screens and tested positive for illegal substances during her improvement period. The circuit court also found that petitioner failed to maintain housing or employment and to consistently participate in visitation with the children. Ultimately, the circuit court terminated petitioner's parental rights and denied her post-termination visitation with the children. It is from the dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[4]The circuit court entered its original dispositional order on October 5, 2015. However, petitioner failed to timely appeal the same. As such, the circuit court re-entered the dispositional order on February 11, 2016, for purposes of this appeal. The Court notes that there is no provision in the Rules of Appellate Procedure for the circuit court to re-enter a disposition order for the purpose of extending the time frame for filing an appeal. The procedure for seeking an extension of time for filing an appeal in a child abuse and neglect proceeding is set forth in Rule 11(f) of the Rules of Appellate Procedure which states that,

> [u]nless otherwise provided by law, an appeal in an abuse and neglect case must be perfected within sixty days of the date the judgment being appealed was entered in the office of the circuit clerk; provided, however, that the circuit court from which the appeal is taken or the Supreme Court may, for good cause shown, by order entered of record, extend such period, not to exceed a total extension of two months, if the notice of appeal was properly and timely filed by the party seeking the appeal . . . . Upon motion filed on or before the deadline for perfecting an appeal, the Court may grant leave to the petitioner to perfect an appeal where a notice of appeal has not been filed and a scheduling order has not been entered. Such relief will be granted only in extraordinary circumstances, and if the motion is granted, the Court may, in its discretion, deny oral argument or impose other sanctions for failure to comply with the Rules.

Accordingly, the Court instructs circuit courts and the parties to properly comply with Rule 11(f) as a means of extending the times frames for filing an appeal in a child abuse and neglect proceeding instead of re-entering a dispositional order.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

To begin, we find no error in the circuit court's termination of petitioner's parental rights. On appeal, petitioner argues that she completed the terms of her improvement period and corrected the conditions that led to the petition's filing. The Court, however, does not agree. While it is true that petitioner complied with some services below, the record is clear that petitioner's issues with domestic violence and substance abuse persisted throughout the proceedings. Importantly, petitioner's argument on appeal only underscores the fact that she did not properly understand how her behavior negatively impacted her children. In support of her appeal, petitioner argues that "her children were cared for and not abused" and that she "was not an abusive or neglectful parent." Instead, petitioner argues that she was "prone to overreacting in dealing with service providers" and blames the DHHR's intervention for substantially contributing to the issues in the home. Petitioner makes these arguments in spite of her stipulation to committing domestic violence in the children's presence and her testimony that the children witnessed her strike the father. Upon our review, the Court finds that petitioner's argument lacks support in the record.

In fact, it is clear that petitioner had severe issues with domestic violence well before the DHHR filed its initial petition in July of 2014. Indeed, the record demonstrates that petitioner was the subject of at least six domestic violence protective proceedings in 2013 alone, including two that the father filed against her for subjecting him to varying degrees of physical violence. Specifically, the father alleged that petitioner told him she would stab him in the neck, and that she struck his face and threw objects at him on several occasions. The evidence further indicated that petitioner's issues with domestic violence continued during the proceedings below, as the circuit court found that petitioner was involved in three domestic violence proceedings in 2015. In total, the circuit court recognized that petitioner was involved in at least eleven domestic violence proceedings. Further, the circuit court found that petitioner was charged criminally with domestic assault for threatening the father with a baseball bat. These incidents supported the circuit court's finding that, despite services designed to remedy the issues of abuse and neglect, petitioner "continued to be involved in domestic violence and domestic altercations."

Moreover, in addition to her ongoing issues with domestic violence, the circuit court specifically found at disposition that petitioner failed to consistently participate in visitation with the children, and was unable to obtain and maintain employment and suitable housing, despite services to assist with these issues. Further, the circuit court found that petitioner failed to consistently participate in drug screens, as directed; provided positive screens during her improvement period; and admitted to using marijuana shortly before disposition. Based upon this evidence, the circuit court specifically found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's welfare.

Pursuant to West Virginia Code § 49-4-604(c)(3), there is no reasonable likelihood conditions of abuse and neglect can be substantially corrected when

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

In support of petitioner's argument that she corrected the conditions of abuse and neglect, she relies heavily on testimony from providers from early in the proceedings that she was complying with the terms of her improvement period. Although that was true at the time of the testimony, it is clear that petitioner's compliance was short-lived and that the conditions of abuse and neglect persisted throughout the proceedings due to petitioner's failure to follow through with the services offered. As such, the circuit court correctly found that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. Contrary to petitioner's argument that the circuit court erred in finding that there was no less-restrictive dispositional alternative than termination, the Court finds that the circuit court was required to terminate her parental rights upon these findings pursuant to West Virginia Code § 49-4-604(a)(6).

Moreover, we have previously held that "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . .' Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As noted above, the circuit court found that petitioner's issues with domestic violence continued, unabated, throughout the proceedings. As such, we find no error in the circuit court's termination of her parental rights.

Finally, petitioner argues that the circuit court erred in denying her post-termination visitation with the children. The Court, however, finds no error in this regard. We have previously held as follows:

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). According to petitioner, the circuit court should have granted her post-termination visitation because of the close bond

between her and the children. Essentially, petitioner argues that because she is the only parent the children have ever known, the circuit court's denial of post-termination visitation is not in their best interests. The Court, however, does not agree. According to the record, the oldest child, H.J., exhibited severe behavioral issues following visitations with the parents, including a defiant and confrontational attitude, disruption in school, physical altercations with other children, and self-injurious behavior. As such, it is clear that visitation below was detrimental to the children and that continued contact would not be in their best interests. For these reasons, we find no error in the circuit court's denial of post-termination visitation with petitioner.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 11, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: June 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

6